UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Johnny Anderson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-02311 |
| | ) | Judge Marvin E. Aspen |
| Regan Allen (Star No. 15090); The City | ) | |
| of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

This is a constitutional false arrest lawsuit against Chicago Police Department Officer

Regan Allen and the City of Chicago.[1]  Before us is Defendants' Rule 12(b)(6) joint motion to

partially dismiss Plaintiff's Third Amended Complaint ("TAC"). (Dkt. No. 33.)  For the reasons

stated below, we grant the motion in part and deny it in part.  We grant the motion as to Count I

to the extent that it brings a Fourteenth Amendment Due Process claim, as to Count II

(Municipal and Supervisory Liability), as to Count III (Illinois Constitutional Claim), and as to

Count V (Illinois Human Rights Act).  We deny the motion as to Count IV (Illinois Civil Rights

Act).

**BACKGROUND**

The following facts are culled from Plaintiff's TAC and are taken as true for the purposes

of this motion. See *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

---

[1] The Response to the Motion to Dismiss suggests that Anderson was released from custody on
October 24, 2017. (Response ("Resp.") (Dkt. No. 38) at 13.)  The Third Amended Complaint does
not specify the length of time Anderson was held in custody.

On March 24, 2016, Defendant and his friend, both African American males, were on their way to meet a friend by a viaduct. (TAC ¶ 11—12). When they arrived at the viaduct, it was raining so they sheltered under it and waited for their friend to arrive. (*Id.* ¶ 13). Defendant Officer Allen happened to drive by at that time and saw the two beneath the viaduct. (*Id.* ¶18). Plaintiff pleaded upon information and belief that Officer Allen was on duty at this time despite driving his personal car and wearing civilian clothing. (*Id.* ¶ 14). Officer Allen proceeded to park his car and watch the two from a vantage point. (*Id.* ¶ 18). At the related criminal trial, Officer Allen testified that he saw Anderson show a gun to his friend under the viaduct and then toss the gun into bushes. (*Id.* ¶ 39). Upon information and belief, Officer Allen was alone when he allegedly saw Anderson throw a gun in the bushes and when he recovered the gun from the bushes. (*Id.* ¶ 40). Forensic analysis established that the gun did not have any fingerprints. (*Id.* ¶ 40). Upon information and belief, Officer Allen did not know the identity of Anderson, nor was he aware that Anderson had a prior felony. (*Id.* ¶ 16).

Eventually Anderson and his friend saw a marked Chicago Police Department ("CPD") squad car headed in their direction, so they started walking away from the viaduct. (*Id.* ¶ 21). The two headed back to a house that they recently left and turned down an alley where they were met by multiple officers who blocked their way, drew their guns, and told them to stop. (*Id.* ¶ 31). Anderson complied with the officers' orders, went to the ground, was put under arrest, got handcuffed, and was searched. (*Id.* ¶¶ 32—33.). When Anderson asked what was going on, the officers did not respond. (*Id.* ¶ 33). The officers did not find a weapon or any narcotics on Anderson. (*Id.* ¶ 34). However, Anderson was later told that he was under arrest for possessing a firearm as an individual with a prior felony conviction. (*Id.* ¶ 36). He was charged in the Circuit Court of Cook County, Illinois with two counts of unlawful use or possession of a

2

weapon by a felon; four counts of aggravated unlawful use of a weapon; and one count of

defacing identification marks of a firearm. (*Id.* ¶ 36). Anderson was found not guilty on all

counts after a bench trial on October 24, 2017. (*Id.* ¶ 38).

Anderson alleges that his unlawful arrest and the unspecified amount of time held in

pretrial detention had a severe negative impact on his life. (*Id.* ¶¶ 43—44). Anderson claims that

he lost his job, could not assist in providing for his family, and was eventually diagnosed with

depression due to his detention. (*Id.* ¶¶ 44—46).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a

claim upon which relief may be granted. We accept "the allegations in the complaint as true

unless they are 'threadbare recitals of a cause of action's elements, supported by mere conclusory

statements.'" *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Ashcroft v.

Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). The pleading must state a claim that is

plausible on its face to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949;

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John v. Cach,

LLC*, 822 F.3d 388, 389 (7th Cir. 2016). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. That is, while the

plaintiff need not plead "detailed factual allegations," the claim must allege facts sufficient "to

raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at

1964—65.

## ANALYSIS

### I.     Count I: Fourteenth Amendment Due Process Claim

Count I is two-fold. First, Count I alleges an unconstitutionally unreasonable seizure.

3

(TAC ¶ 49). Second, Count I alleges a violation of the due process clause under the Fourteenth

Amendment. (*Id.*) Defendants' motion to dismiss focuses exclusively on the Fourteenth

Amendment due process clause allegation and does not seek dismissal of the seizure allegation.

So, we scrutinize only the Fourteenth Amendment Due Process Clause claim.

Defendants' argue that Count I's Due Process Clause claim should be dismissed because

the Fourteenth Amendment's Due Process Clause is not the correct vehicle to redress a wrongful

pretrial detention. Indeed, the Supreme Court instructs that where a complaint alleges that a

"form of legal process resulted in pretrial detention unsupported by probable cause, then the right

allegedly infringed lies in the Fourth Amendment." *Manuel v. City of Joliet*, 137 S. Ct. 911, 18

(2017); *see also Lewis v. City of Chi.*, 914 F.3d 472, 474 (7th Cir. 2019). In *Lewis*, the plaintiff

brought § 1983 claims against the City of Chicago and certain Chicago Police Officers. *Lewis*,

914 F.3d at 474. Lewis alleged that his two-year detention in the Cook County Jail between his

arrest and when the charges were dismissed violated his rights under the Fourth Amendment and

the Fourteenth Amendment's Due Process Clause. *Id.* Like Anderson, Lewis claimed that his

pretrial detention was based on police reports that falsely implicated him for unlawful possession

of a firearm. *Id*. Relying on *Manuel*, the Seventh Circuit affirmed the dismissal of Lewis'

Fourteenth Amendment claim in favor of his Fourth Amendment claim. *Id*. at 476.

Here, Anderson's Due Process Clause claim is based on the pleaded fact that Officer

Allen's false allegations led to his not guilty verdict and alleged wrongful pretrial detention and

prosecution. (TAC ¶ 52). Accordingly, we must follow *Manuel* and *Lewis*: the constitutional

injury arising from a wrongful pretrial detention rests on the fundamental Fourth Amendment

principle that a pretrial detention is a 'seizure' that is justified only on probable cause. *Manuel*,

137 S. Ct. at 918. *see also Lewis*, 914 F.3d at 476-77. Not the Fourteenth Amendment's Due

4

Process Clause. *Id.* Therefore, we grant Defendants' motion and dismiss Count I only as to its Fourteenth Amendment Due Process claim. The component of Count I that alleges an unreasonable seizure survives as Defendants do not move to dismiss it.

## II.     Count 2: Municipal and Supervisory Liability (*Monell*) Claim.

Defendants next ask for dismissal of Anderson's *Monell* claim. Municipalities can be liable under § 1983 where the action that is alleged to be unconstitutional implements or executes a policy, custom, or practice by that municipality's agents. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). In a *Monell* claim, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that was the moving force behind the plaintiff's constitutional injury. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Bd. of Cty. Commr's v. Brown*, 520 U.S. 397, 405 (1997). A "moving force" must be pleaded with enough facts to allow the court to infer a "direct causal link between the municipal action and the deprivation of federal rights" or constitutional injury. *Bd. of Cty. Commr's,* 520 U.S. at 397.

Anderson's *Monell* claim alleges that Anderson was injured by CPD's alleged custom or practice of unconstitutional arrests that disproportionality impacts African Americans. (TAC ¶¶ 23—26, 56—58.) In support of these allegations, Anderson relies on Retired Judge Arlander Keys' reports on this topic pursuant to a settlement agreement between CPD and the American Civil Liberties Union of Illinois. (TAC ¶ 23.) The report contains Judge Keys' observations that Chicago's African American population was disproportionally subjected to investigatory stops, also known as *Terry* stops. (*See, e.g.*, TAC ¶ 24.) These reports are often cited as support of *Monell* lawsuits against the City of Chicago, ultimately leading to a consent decree in early 2019. (TAC ¶ 29.) We do not dispute the accuracy of these reports.

Anderson alleges this custom or practice was actually known, constructively known and/or ratified by the City and the CPD, and was promulgated with deliberate indifference to his rights, as guaranteed by the Fourth and Fourteenth Amendments. (TAC ¶ 61). Specifically, that this practice or custom deprived Plaintiff of his Fourth Amendment right to be free from unjustified and unlawful arrest. *Id.*

In evaluating Anderson's allegations, we note a subtle yet critical nuance in Anderson's lawsuit as it is pleaded. That nuance is that the cited reports focus on unconstitutional *Terry* investigatory police stops while Anderson's allegations are premised on a false arrest. Courts differentiate between *Terry* stops and arrests. For example, arrests must be supported by probable cause while investigative detentions, or *Terry stops*, must be supported by a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968); *see People v. Luedemann*, 857 N.E.2d 187, 196 (Ill. 2006). Here, the TAC overwhelmingly focuses on pleaded facts pertaining to investigatory stops, not *arrests*. (TAC ¶ 26).

Persuasively, in *Jordan v. City of Chicago, et. al.*, Judge Durkin dismissed a similar *Monell* claim. 15-cv-157, Dkt. No. 14 at 3 (N.D. Ill. April 27, 2015). There, the plaintiff alleged that CPD's "stop and frisk" searches led to his arrest. *Id*. Judge Durkin held that that plaintiff's allegations concerning unconstitutional stops was not enough to state a claim for relief based on an unconstitutional arrest. *Id.* ("while Plaintiff alleges that his arrest occurred during the time frame studied by the ACLU, he does not explain how the alleged policy of unconstitutional investigative stops led to his arrest. By his own pleading, Plaintiff was not subjected to an investigative stop, as officers immediately put him in handcuffs and initiated a custodial arrest.") Jordan's false arrest claim suffered from the same downfall as the case before us: failure to plead

6

how the alleged policy of unconstitutional investigatory stops led to his arrest because he pleaded

that he was immediately put in handcuffs and arrested. *See id.*

Anderson argues that *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) saves

his *Monell* claim. The plaintiff in *White* alleged a *Monell* claim against the city for the allegedly

widespread practice of seeking arrest warrants without probable cause based on purely

conclusory criminal complaint forms. *White,* 829 F.3d at 841. The Seventh Circuit in *White*

reversed the district court for having erroneously dismissed the *Monell* claim. *Id.* The facts

underlying *White*'s *Monell* claim are distinguishable from this case because the heart of *White*'s

case was an unconstitutional arrest. There, the *Monell* claim was premised on an arrest executed

based on an incomplete arrest warrant that lacked factual information about the basis for

probable cause. The key pleaded fact in *White* that saved that plaintiff was that that case's

officer used a boilerplate arrest warrant form that was standard issue by CPD. *Id.* at 844. Based

on that, the Seventh Circuit found that the standard issue nature of the arrest warrant was enough

to allege a widespread policy. *Id.*

Here, Anderson advances no allegations like those in *White* that plausibly suggest a

widespread custom or practice of false arrests. The only allegation in the TAC that points

towards such is based merely on information and belief: "Upon information and belief, the City

was alerted to the regular use of false arrests by its police officer, but has nevertheless exhibited

deliberate indifference to such false arrests . . . ." (TAC ¶ 62.) We therefore hold that

Anderson's TAC fares no better than the analogous complaint in *Jordan*, 15-cv-157, Dkt. No. 14

at 3 (N.D. Ill. April 27, 2015). Because the TAC does not allege enough factual content to allow

us to draw a plausible inference that the City's practice of investigatory stops (as described in the

7

Judge Keys/ACLU reports) was the moving force behind Anderson's constitutional injury of a

false arrest, we dismiss the *Monell* claim. *See id.*[2]

Accordingly, we grant Defendant's motion to dismiss Count II without prejudice.[3]

Plaintiff may replead this claim within 30 days if he can assert more allegations connecting

Anderson's arrest to a *Monell* practice or custom.

### III.    Counts III, IV, and V: Claims Brought Under Illinois Law

Count III (Violation of Illinois Constitutional Protection against Illegal Search and

Seizures, Ill. Const. Art. I, Sec. 6), Count IV (Illinois' Civil Rights Act, 740 ILCS 23/5), and

Count V (Illinois Human Rights Act, 775 ILCS 5/5-102(C)) are claims brought under Illinois

law. (TAC ¶¶ 63—71.)  We address these counts in turn.

---

[2] Even if we were to find such an inference and hold that Anderson alleged a custom or practice of false arrests, Anderson's *Monell* claim would nevertheless warrant dismissal.  A *Monell* claim must allege that the City was deliberately indifferent to its citizens to survive a motion to dismiss. *See, e.g.*, *Canton v. Harris*, 489 U.S. 378, 388-89 (1989) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers) (internal citation omitted).  Contrary to deliberate indifference, the timing of Anderson's arrest combined with the chart from the Judge Keys' report suggests that the City took deliberate action to significantly *decrease* the number of street stops on African Americans at the time of Anderson's arrest.  The chart shows that in the two years before the consent decree and Anderson's arrest, Chicago police officers made over 900,000 street stops on African Americans while the year Anderson was arrested and the following year had a number reduced to 153,506.  Since Anderson's street stop took place in 2016, it happened the year that the City drastically reduced and reformed its street stop practices. Indeed, as Anderson points out, racial disparities in policing continues as highlighted in Judge Keys' report. (TAC ¶ 26).  Although police reforms are far from complete, this pleaded trend shows that the City showed deliberate intention to reform and improve policing practices, not deliberate indifference to the problem.  Thus, the appearance that the City took deliberate action of reform leading up to the arrest shows a lack of deliberate indifference to the alleged custom or practice at the core of this lawsuit.

[3] Count II is additionally dismissed to the extent that it attempts to bring a claim for supervisory liability for two reasons. (TAC ¶ 58.)  First, none of Officer Allen's supervisors are named in the lawsuit thus any claim against his supervisor(s) is incomplete as pleaded.  Second, municipalities cannot be held liable in cases like this one on a *respondeat superior* theory. *See Monell*, 436 U.S. at 691.

### A.    Statute of Limitations

Defendants challenge Counts III, IV, and V under the applicable statute of limitations. Under the Illinois Tort Immunity Act ("Act"), a plaintiff bringing a "civil action" against a municipality must do so "within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a).  The Act defines a "civil action" to include "any action, whether based upon the common law or statutes or Constitution of this State." 745 ILCS 10/8-101(c); *Blocker v. City of Chi.*, No. 17 CV 00055, 2017 WL 3278323, at *2 (N.D. Ill. Aug. 2, 2017) ("He alleges that he believed his rights were being violated in August 2014, but he did not sue until January 2017.  Blocker's state-law claims against the officers are untimely.").

Anderson asks us to follow *Vodak v. City of Chicago*'s holding that constitutional claims are "nontortious actions" that are not covered by the Act instead of the Act's plain language and *Blocker*. *Vodak v. City of Chi.*, No. 03-cv-2463, 2006 WL 1049736, at *2 (N.D. Ill. Apr. 19, 2006); *Blocker*, 2017 WL 3278323 at *2.  We find the more recent *Blocker* holding more persuasive because it aligns with the Act's plain text.  Moreover, Anderson's argument asks us to ignore the numerous opinions referencing *constitutional torts*. *See, e.g.*, *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019).

Therefore, these three state claims, as pleaded, plainly appear subject to the Act's 1-year statute of limitations because they are civil actions based on the Illinois statutes or constitution. 745 ILCS 10/8-101(a), (c).[4]  Regardless of whether the accrual date is the date of his arrest (March 24, 2016) or the date he was found not guilty (October 24, 2017), Anderson filed his

---

[4] Anderson also contends that the state's 5-year period of limitations should apply.  735 ILCS 5/13-205.  That argument ignores that statute's provision that it does not apply to any claim "otherwise provided for," such as a claim covered by the Act. *Id.*

original Complaint more than a year after the 1-year timeframe, on April 5, 2019. (TAC ¶¶ 11—12, 38.)

The text of the Illinois Civil Rights Act ("ICRA"), however, saves Count IV from dismissal under the Act. 740 ILCS 23/5(b). In relevant part, the ICRA requires ICRA claims "be brought not later than 2 years after the violation." *Id.* The "legislature's clearly expressed intent to provide a two-year statute of limitations for suits brought under ICRA takes precedence over the Tort Immunity Act's more general one-year statute of limitations." *Brown v. Cook Cty.*, No. 17-cv-8085, 2018 WL 3122174, at *16 (N.D. Ill. June 26, 2018). The Complaint does not plead the date on which Anderson was released from custody[5] and so it would be premature absent discovery to resolve this issue at the motion to dismiss stage. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 913 (2017).

For these reasons, Defendants' motion to dismiss based on timeliness is granted as to Counts III and V, but denied as to Count IV.

### B. Count IV: Illinois Civil Rights Act

Defendants additionally contend that the ICRA claim should be dismissed for having been insufficiently pleaded. The ICRA prohibits local government law enforcement agencies from subjecting a person to discrimination on the grounds of race, color, national origin or gender, and utilizing criteria or methods of administration that have the effect of subjecting individuals to such discrimination. 740 ILCS 23/5. Defendants contend that the ICRA claim should be dismissed on the basis that Anderson's TAC does not allege that Officer Allen discriminated against Anderson on the basis of an ICRA protected class. Although somewhat

---

[5] The Response to the Motion to Dismiss suggests that Anderson was released from Custody on October 24, 2017. (Resp. at 13.) If that is taken as true as part of the TAC, then the ICRA would still not block this lawsuit because the original Complaint was filed on April 5, 2019, within two years of that release date.

conclusory, Anderson does contend that discrimination led to his belief that he was wrongly and unconstitutionally arrested. (*Id.* ¶¶ 68—71.) Since the overarching theory of Anderson's lawsuit is fundamentally rooted in allegations of discrimination, we hold that the TAC pleads enough to warrant discovery into whether he was discriminated against in violation of the ICRA.

C. **Count V**: **Illinois Human Rights Act**

In addition to warranting dismissal for untimeliness, Defendants ask that the Illinois Human Rights Act ("IHRA") claim be dismissed for lack of jurisdiction. Plaintiff does not respond to that contention. The IHRA requires a complainant first file its claim with the Illinois Department of Human Rights within 300 days of an alleged infraction and before filing before a court. *See* 775 ILCS 5/7A-102(A)(1), (G)(2). The record before us contains no indication whatsoever that Plaintiff complied with these statutory requirements. Thus, we additionally grant Defendants' motion with respect to Count V for lack of jurisdiction.

**CONCLUSION**

Defendants' partial motion to dismiss Plaintiff's Third Amended Complaint is granted in part and denied in part. We dismiss Count I's Fourteenth Amendment Due Process claim with prejudice, Count II (*Monell* claim) without prejudice, Count III (Illinois Constitutional Search and Seizure) with prejudice, and Count V (Illinois Human Rights Act) with prejudice. We deny Defendants' motion to dismiss as to Count IV (Illinois Civil Rights Act).[6] It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: October 5, 2020
Chicago, Illinois

---

[6] The surviving causes of action are Count I's claim for an unreasonable search and seizure and Count IV.